Edward A Galloway, Bar No. 128962
egalloway@jdtplaw.com
Bradley R. Mathews, Bar No. 202055
bmathews@jdtplaw.com
JACKSON, DeMARCO, TIDUS, PETERSEN
& PECKENPAUGH
A Law Corporation
2030 Main Street, Suite 1200
Irvine, California 92614
Telephone:  (949) 752-8585
Fax:  (949) 752-0597

Attorneys for Defendants
APPIAN CONSTRUCTION CO., INC. and
1221 MONTICELLO, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIC INSURANCE COMPANY, a New York corporation<br><br>Plaintiff,<br><br>vs.<br><br>APPIAN CONSTRUCTION CO., INC., a California corporation; 1221 MONTICELLO, L.P., a California Limited Partnership; and DOES 1 through 50, inclusive<br><br>Defendants. | CASE NO. C-07-05988 EMC<br><br>**NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS [Civil L.R. 3-13]** |

1. <u>Underlying Construction Defect Case.</u>

Pursuant to Civil L.R. 3-13, Defendants Appian Construction Co., Inc. (**"Appian"**) and 1221 Monticello, L.P. (**"Monticello"**), who are sometimes collectively referred to herein as "**Defendants,**" hereby respectfully notify the Court that a case that is related to the instant case is now pending in Contra Costa County Superior Court entitled  *Geoffrey and Kathy Manley v. Appian Construction Co., Inc.; and 1221 Monticello, LP; et al.,* Contra Costa County Superior Court Case No. C05-00358, hereinafter referred to as the **"Construction Defect Case."**  That

action was filed on or about February 28, 2005. The Construction Defect Case was brought by the owners of a single family residence against Monticello, which sold the home to the homeowners, and against Appian, which was the general contractor for the construction of the home. In their Third Amended Complaint in the Construction Defect Case, the plaintiff homeowners sued the same entities that are Defendants in the instant case – Appian and Monticello. Plaintiff asserted a cause of action for negligence against Appian and Monticello, for strict liability against Appian, and for breach of contract against Monticello. The plaintiffs in that case are seeking damages in the form of costs of repair, relocation costs, loss of market value, loss of use and investigation costs, among other things. A copy of the Third Amended Complaint in that related case is attached hereto as Exhibit "A." The following are the key facts regarding the scheduling of the Construction Defect Case

- **Trial Date:** None Set;
- **Mediation:** April 9, 2008;
- **Percipient witness discovery:** Not yet completed. Trial court instructed parties on February 5, 2008, to meet and confer regarding preparation of a Case Management Order, and report back to the Court on February 29, 2008;
- **Expert designations:** Not yet complete;
- **Expert depositions:** Not yet started.

2. <u>**Relation of the Construction Defect Case to the Instant Case.**</u>

In the instant case, Plaintiff NIC Insurance Co. is an insurance carrier which issued liability insurance policies to Defendants, and is seeking a judgment declaring that Plaintiff NIC has no duty to indemnify Defendants against any judgment in the Construction Defect Case. Defendants respectfully submit that it is premature for the Plaintiff insurance carrier in the instant case to seek a judgment declaring that Plaintiff has no duty to indemnify Defendants against any judgment in the Construction Defect Case because no judgment has been entered and it is impossible to know at this time what such a judgment, if any, might be for. Indeed, as stated above, no trial date has been set in that case. Further, allowing percipient and expert witness depositions to proceed in the instant case could prejudice Defendants in the Construction Defect Case, particularly given

1  that percipient witness depositions are not yet complete in that case, and expert depositions have

2  not yet even started.  Defendants therefore respectfully submit that the instant case should be

3  stayed or dismissed without prejudice pending resolution of the Construction Defect Case.

4  Defendants' counsel are conferring with Plaintiff's counsel regarding this issue.

5                                             Respectfully submitted,

6  DATED:  February 6, 2008                   JACKSON, DeMARCO, TIDUS,
                                              PETERSEN & PECKENPAUGH

7

8

9                                            By:  s/Bradley R. Mathews
                                             Bradley R. Mathews
10                                           Attorneys for Defendants
                                             Appian Construction Co., Inc. and
11                                           1221 Monticello, LP.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF PENDENCY OF OTHER ACTIONS - CASE NO. C-07-05988 EMC**

# EXHIBIT A

1  CRAIG L. JUDSON - 114926
   Bold, Polisner, Maddow, Nelson & Judson
2  A Professional Corporation
   500 Ygnacio Valley Road, Suite 325
3  Walnut Creek, CA 94596
   (925) 933-7777 - telephone
4  (925) 933-7804 - facsimile

5  Attorneys for Geoffrey and Kathy Manley

FILED

2007 OCT -2 P 12: 18

K. TORRE, CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CALIF.

BY: _____
    C. Green

RECEIVED
MC or Diary _____ _____
P.O.S. _____ by _____
_5673027_
OCT 10 2007
Folder _____ by _____
Date in file _____ by _____
WOOD SMITH HENNING & BERMAN LLP

6

7

8          SUPERIOR COURT OF CALIFORNIA
        IN AND FOR THE COUNTY OF CONTRA COSTA

9

10 GEOFFREY AND KATHY MANLEY,            )   CASE NO: C05-00358
                                        )
11 Plaintiffs,                          )   **THIRD AMENDED COMPLAINT**
                                        )   **FOR DAMAGES**
11 vs.                                  )
                                        )
12                                      )
13 APPIAN CONSTRUCTION CO., INC.,       )
   1221 MONTICELLO, LP, HDO             )
13 ARCHITECTS PLANNERS, HUMANN          )
14 COMPANY, INC., TABOR                 )
   ENGINNEERING ARCHITECTURAL           )
15 CONSULTANTS, INC., d.b.a. TEAC       )
   CONSULTING ENGINEERS, GIROVAS        )
16 LANDSCAPE CONSTRUCTION, INC.,        )
   LAWRENCE D. SHERMAN, Inc., and       )
17 DOES 1 through 25, inclusive,        )
                                        )
18          Defendants                  )

19

20              **GENERAL ALLEGATIONS**

21 1.   Plaintiffs Geoffrey and Kathy Manley are and at all times mentioned in this

22      complaints were individuals residing in Contra Costa County.  They are the owners

23      of the residential real property located at 3918 Los Arabis Drive, Lafayette,

24      California ("the Subject Property.")

25 2.   Defendant Appian Construction, Inc. (Hereinafter "Appian") is now and at all times

Manley vs. Appian Construction, Inc., et al.
Page 1
Third Amended Complaint for Damages

1    mentioned in this complaint a corporation organized and existing under the laws of

2    the State of California, with its principal place of business in Contra Costa County,

3    California. Plaintiffs are informed and believe that defendant Appian constructed

4    the Subject Property.

5    3.    Defendant 1221 Monticello LP (hereinafter "1221 Monticello") is now, and at all

6          times mentioned in this complaint was, a California Limited Partnership duly

7          organized and existing under the laws of the State of California, with its principal

8          place of business in Contra Costa County, California. Plaintiffs are informed and

9          believe that defendant 1221 Monticello was the owner and developer of the Subject

10         Property, and sold the Subject Property to the Plaintiffs.

11   4.    Defendant HDO Architect Planners (hereinafter "HDO") is now and at all times

12         mentioned in this complaint a business entity of unknown form and at all times

13         relevant herein was doing business in the County of Contra Costa, California.

14         Plaintiffs are informed and believe that HDO provided architectural services for the

15         design of the Subject Property.

16   5.    Defendant Humann Company, Inc., (hereinafter "Humann") is now and at all times

17         mentioned in this complaint a business entity of unknown form and at all times

18         relevant herein was doing business in the County of Contra Costa, California.

19         Plaintiffs are informed and believe that Humann provided civil engineering services

20         for the design of the Subject Property.

21   6.    Tabor Engineering Architectural Consultants, Inc. dba TEAC Consulting Engineers

22         (hereinafter "TEAC") is now and at all times mentioned in this complaint a

23         corporation organized and existing under the laws of the State of California, with its

24         principal place of business in Contra Costa County, California. TEAC provided

25         structural engineering services for the design of the Subject Property.

Manley vs. Appian Construction, Inc., et al.
Page 2
Third Amended Complaint for Damages

1    7.    Lawrence D. Sherman, Inc. (hereinafter "Sherman") is now, and at all times

2          mentioned in this complaint was, a corporation duly organized and exiting under the

3          laws of the State of California, and conducting business in Contra Costa County,

4          California. Plaintiffs are informed and believe that Sherman provided construction

5          services related to grading and drainage related activities at the Subject Property.

6    8.    Giorvas Landscape Construction, Inc. (hereinafter "Giorvas") is now, and at all times

7          mentioned in this complaint was, a corporation duly organized and existing under the

8          laws of the State of California, and conducting business in Contra Costa County,

9          California. Plaintiffs are informed and believe that Giorvas provided construction

10         services related to grading, drainage, concrete flatwork, and retaining wall

11         construction at the Subject Property.

12   9.    The true names of defendants DOES 1 through 25, inclusive, are unknown to

13         plaintiffs at this time. Plaintiffs sue these defendants by such fictitious names

14         pursuant to section 474 of the Code of Civil Procedure. Plaintiffs are informed and

15         believe, and based on that information and belief allege, that each of the defendants

16         designated as a DOE is negligently or otherwise legally responsible for the events

17         and happenings referred to in this complaint, and negligently or otherwise unlawfully

18         caused the injuries and damages to plaintiffs alleged in this complaint. The names,

19         capacities and relationships of DOES 1 through 50 will be alleged by amendment to

20         this complaint when they are known.

21   10.   Plaintiffs are informed and believe, and based on that information and belief allege,

22         that at all times mentioned in this complaint, defendants were the agents and

23         employees of their co-defendants, and in doing the things alleged in this complaint

24         were acting within the course and scope of such agency and employment.

25   11.   Plaintiffs are informed and believe, and based on that information and belief allege,

1    that at all times mentioned in this complaint, defendants Appian and 1221

2    Monticello were and are in the business of developing real property into residential

3    units for sale to the general public, both individually and with others. Plaintiffs are

4    informed and believe, and based on that information and belief allege, that each of

5    the remaining defendants participated in the development, design, engineering,

6    investigation, inspection, grading, construction, marketing, and/or sale of the

7    property.

8

9    **FIRST CAUSE OF ACTION**

10   **(Negligence against Appian, 1221 Monticello,**
     **Giorvas, Sherman, and DOES 1-10)**

11

12   12.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 11 of the

13         General Allegations as though set forth fully herein.

14   13.   Plaintiffs are informed and believe, and based on that information and belief allege,

15         that defendants and DOES 1-10 owned, developed, engineered, investigated, graded,

16         constructed, marketed, and/or sold the property, and as such owed a duty of care to

17         plaintiffs as purchasers of the Subject Property.

18   14.   Plaintiffs are further informed and believe, and based on that information and belief

19         allege, that defendants and DOES 1-10, and each of them, breached their duty of care

20         to plaintiffs and failed to exercise reasonable care in that they failed to properly

21         supervise, inspect, investigate, prepare, and construct the subject the subject

22         residence at the property in that the house suffers from numerous defects, the most

23         prominent of which includes the failure of part of all of the foundation systems

24         causing the walls and floors to shift and move, the walls and floors and

25         improvements attached thereto to break, crack, and/or crumble, windows and doors

Manley vs. Appian Construction, Inc., et al.
Page 4
Third Amended Complaint for Damages

1    not to operate properly, floors and walls to be out of level and plumb, retaining walls

2    and concrete flatwork to move, and other work, all due to defendants', and each of

3    their, failure to ensure that the Subject Property was adequately developed, failure to

4    ensure the soil was adequately graded and compacted, failure to provide adequate

5    pier support and foundation, failure to comply with applicable building codes and

6    with the plans and specifications, failure to complete their work in a workmanlike

7    manner according to the standard of care, as the case may be. Other defects exist in

8    the property which plaintiffs have yet to discover.

9    15.    As a direct and legal result of the negligence of the defendants, and each of them,

10    the Subject Property is defective. Plaintiffs have been, and continue to be, damaged

11    both in terms of the physical damage to the property and also in terms of physical

12    and emotional bodily injury being suffered by Plaintiffs, all in an amount to be

13    proven at trial.

14    16.    As a further direct and legal result of the negligence of defendants, and each of

15    them, plaintiffs will incur and/or have incurred repair costs, loss of use and loss of

16    market value in an amount to be proven at trial.

17    17.    As a further direct and legal result of the negligence of defendants, and each of

18    them, plaintiffs have been required to expend sums of money to investigate and

19    make temporary repairs to the Subject Property in an amount to be proven at trial.

20    WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as set

21    forth below.

22    **SECOND CAUSE OF ACTION**

23    **(Negligence Against TEAC and DOES 11-20)**

24    18.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 17, inclusive,

25    as though fully set forth herein.

Manley vs. Appian Construction, Inc., et al.
Page 5
Third Amended Complaint for Damages

1    19.    Defendants TEAC and Does 11-20 designed, engineered, and/or oversaw

2           construction of the Subject Property, and in so acting, owed a duty of care to

3           Plaintiffs to design, engineer, inspect, and oversee the construction of the Subject

4           Property in accordance with applicable safety and building codes and acceptable

5           standards of the industry.

6    20.    Defendants TEAC and Does 11-20, and each of them, breached their duty of care to

7           Plaintiffs and failed to act according to the standard of care, in accordance with the

8           plans and specifications, and applicable safety and building codes.  As a result, the

9           Subject Property suffers from the defects alleged herein.

10   21.    As a direct and legal result of the negligence of these defendants, and each of them,

11          the Subject Property is defective and Plaintiffs have been, and continue to be,

12          damaged in an amount to be proven at trial.

13   22.    As a further proximate and legal result of the negligence of defendants TEAC and

14          DOES 11-20, and each of them, plaintiffs have incurred, and will continue to incur

15          repair costs, loss of use of and loss of market value in an amount to be proven at

16          trial.

17   23.    As a further proximate and legal result of the negligence of these defendants, and

18          each of them, plaintiff has been required to expend sums to investigate and make

19          temporary repairs to the Property in an amount to be proven at trial.

20          WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as set

21   forth below.

22

23                        **THIRD CAUSE OF ACTION**

24                  **(Negligence against Humann and DOES 11-20)**

25   24.    Plaintiffs incorporate the allegations set forth in paragraphs 1 through 23, inclusive,

Manley vs. Appian Construction, Inc., et al.
Page 6
Third Amended Complaint for Damages

1    as though fully set forth herein.

2    25.    Plaintiffs are informed and believe that based upon discussion with counsel for

3           Appian that on or about the year 2000, Defendant Appian hired defendant Humann to

4           prepare civil engineering plans and specifications for the design and construction of

5           two single family residences, one of which is on the Subject Property and the other

6           is on the lot next door to the Subject Property. The scope of this work included

7           preparation of the grading and drainage plans for both the Subject Property and the

8           property next door to the Subject Property, and to oversee portions of the

9           construction. Plaintiffs are informed and believe that defendants Humann and Does

10          11-20 were hired on an oral contract basis, that no written contract exists, and that

11          Appian paid Humann and Does 11-20 on a time and material basis to prepare the

12          grading and drainage plans for the development of both the Subject Property and the

13          property next door to the Subject Property.

14   26.    Utilizing the grading and drainage plans prepared by Humann, defendant Monticello

15          developed and Appian constructed a single family residence on each of the two lots,

16          including the home on the Subject Property. Both properties were developed and

17          constructed on a speculative basis with the intention of selling the properties upon

18          completion of construction to a member of the general public, such as plaintiffs

19          who purchased the Subject Property from 1221 Monticello. Members of the

20          general public to whom the single family residences were being marketed, including

21          plaintiffs as the first and only purchasers and residents of the Subject Property, were

22          intended beneficiaries of the agreement between Humann and Appian with respect to

23          the quality and suitability of the grading and drainage plans. Plaintiffs were and

24          continue to be the first and only owners and residents of the Subject Property.

25   27.    In so acting, defendants Humann and Does 11-20 owed a duty of care to Plaintiffs to

Manley vs. Appian Construction, Inc., et al.
Page 7
Third Amended Complaint for Damages

1   design, engineer, inspect, and oversee the construction of the Subject Property in

2   accordance with applicable safety and building codes, the standard of care applicable

3   to their professional design services, and other acceptable standards of the industry.

4   28.   Defendant Humann knew or should have known that upon completion, the Subject

5   Property would be offered for sale to the general public. Defendant Humann knew

6   or should have known that persons such as plaintiffs, as members of the general

7   public to whom the single family homes were being marketed, would suffer damages

8   if Humann designed, engineered, or oversaw construction in a manner which fell

9   below the applicable standard of care and did not comply with applicable safety and

10   building codes and other applicable standards of the industry. Defendant Humann

11   knew or should have foreseen that plaintiffs, as members of the general public to

12   whom the single family homes were being marketed, would suffer damages if

13   Humann designed, engineered, or oversaw construction in a manner which fell below

14   the applicable standard of care applicable to their professional design services.

15   29.   Defendants Humann and Does 11-20, and each of them, breached their duty of care

16   to Plaintiffs, who are and continue to be the only residents and owner of the Subject

17   Property, by failing to act according to the standard of care for civil engineers, in

18   accordance with the plans and specifications, and applicable safety and building

19   codes. As a direct and proximate result of such breach, the Subject Property suffers

20   from numerous defects alleged attributable to Humann and Does 11-20's actions,

21   including, but not limited to:

22      a.   There is an inadequate perimeter subdrain around the Subject Property to

23           collect and carry subsurface water away from the foundation support soils,

24           which was a substantial factor in bringing about the failure of the foundation

25           systems at the Subject Property, causing walls and floors to shift and move,

Manley vs. Appian Construction, Inc., et al.
Page 8
Third Amended Complaint for Damages

1    the walls and floors and improvements attached thereto to break, crack,
2    and/or crumble, windows and doors not to operate properly, floors and walls
3    to be out of level and plumb, and retaining walls and concrete flatwork to
4    move.

5    b.    There is an inadequate drainage system around the perimeter of the house to
6    collect or carry surface water away from the foundation support soils, which
7    was a substantial factor in bringing about the failure of the foundation
8    systems at the Subject Property, causing walls and floors to shift and move,
9    the walls and floors and improvements attached thereto to break, crack,
10    and/or crumble, windows and doors not to operate properly, floors and walls
11    to be out of level and plumb, and retaining walls and concrete flatwork to
12    move.

13    c.    There are no adequate provisions to properly collect and remove surface
14    water runoff uphill and adjacent to the Subject Property.  The excess surface
15    water was a substantial factor in bringing about the failure of the foundation
16    systems at the Subject Property, causing walls and floors to shift and move,
17    the walls and floors and improvements attached thereto to break, crack,
18    and/or crumble, windows and doors not to operate properly, floors and walls
19    to be out of level and plumb, and retaining walls and concrete flatwork to
20    move.

21    d.    There is inadequate subsurface drainage to drain the Subject Property site
22    uphill from or adjacent to the Subject Property, which was a substantial
23    factor in bringing about the failure of the foundation systems at the Subject
24    Property, causing walls and floors to shift and move, the walls and floors and
25    improvements attached thereto to break, crack, and/or crumble, windows and
doors not to operate properly, floors and walls to be out of level and plumb,

1    and retaining walls and concrete flatwork to move.

2    e.    There was no provision in Humann's plans for installation of hydraugers,

3    which were recommended by Diablo Soils, the soils engineer, as set forth in

4    the soils report. The lack of hydraugers was a substantial factor in bringing

5    about the failure of the foundation systems at the Subject Property, causing

6    walls and floors to shift and move, the walls and floors and improvements

7    attached thereto to break, crack, and/or crumble, windows and doors not to

8    operate properly, floors and walls to be out of level and plumb, and retaining

9    walls and concrete flatwork to move.

10    f.    At the time of the initial grading of the property, water and inadequate soils

11    were discovered along the eastern side of the property. Such discovery

12    necessitated relocating the home to the west and providing additional

13    drainage to protect the integrity of the structure, yet such changes do not

14    appear on the as-built plans provided by Humann as required under the

15    standard of care. The failure of Humann to relocate the home's site and

16    provide additional drainage was a substantial factor in bringing about the

17    failure of the foundation systems at the Subject Property, causing walls and

18    floors to shift and move, the walls and floors and improvements attached

19    thereto to break, crack, and/or crumble, windows and doors not to operate

20    properly, floors and walls to be out of level and plumb, and retaining walls

21    and concrete flatwork to move.

22    g.    Defects in construction exist which should have been identified and

23    corrected upon inspection by Humann.

24    30.    As a direct and legal result of the negligence of these defendants, and each of them,

25    the Subject Property has suffered property damage and is therefore defective, in that

it suffers from movement caused by the numerous defects set forth above.

1    31.   As a further proximate and legal result of the negligence of defendants Humann and

2          DOES 11-20, and each of them and the resultant property damages, plaintiffs have

3          incurred, and will continue to incur repair costs, loss of use of and loss of market

4          value in an amount to be proven at trial.

5    32.   As a further proximate and legal result of the negligence of these defendants, and

6          each of them, and the resultant property damages, plaintiffs have been required to

7          expend sums to investigate and make temporary repairs to the Property in an amount

8          to be proven at trial.

9          WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as set

10   forth below.

11

12                        **FOURTH CAUSE OF ACTION**

13                    **(Negligence against HDO and DOES 11-20)**

14   33.   Plaintiffs incorporate the allegations set forth in paragraphs 1 through 34, inclusive,

15         as though fully set forth herein.

16   34.   Plaintiffs are informed and believe that on or about May 1, 2000,  Defendant Appian

17         hired defendant HDO as the architect, to prepare the architectural plans for the

18         construction of two a single family residences, one of which is on the Subject

19         Property and the other is on the lot next door to the Subject Property, to oversee

20         construction, and to bear ultimate responsibility for all design plans.  A copy of the

21         contract between HDO and Appian is attached hereto as Exhibit "A".  Plaintiffs are

22         informed and believe based upon discussion with counsel for HDO that although

23         Exhibit "A" is unsigned, an executed copy of the contract exists and that HDO and

24         Appian conducted their business relationship under the terms of Exhibit "A".

25   35.   Utilizing the architectural plans prepared by HDO, defendant Monticello developed

           and Appian constructed a single family residence on each of the two lots, including

the home on the Subject Property. Both properties were developed and constructed on a speculative basis with the intention of selling the properties upon completion of construction to a member of the general public, such as plaintiffs who purchased the Subject Property from 1221 Monticello. Members of the general public to whom the single family residences were being marketed, including plaintiffs as the first and only purchasers and residents of the Subject Property, were intended beneficiaries of the agreement between HDO and Appian with respect to the quality and suitability of the design and architectural plans. Plaintiffs were and continue to be the first and only owners and residents of the Subject Property.

36. Defendants HDO and Does 11-20 designed, engineered, and/or oversaw construction of the Subject Property pursuant to the terms of the agreement between HDO and Appian, and in so acting, HDO owed a duty of care to Plaintiffs to design, engineer, inspect, and oversee the construction of the Subject Property in accordance with applicable safety and building codes, the standard of care applicable to their professional design services, and other acceptable standards of the industry.

37. Defendant HDO knew or should have known that upon completion, the Subject Property would be offered for sale to the general public. The contract between HDO and Appian (Exhibit "A") recites HDO's "understanding that you [Appian] wish to develop the parcel with 2 single family homes." Defendant HDO knew or should have known that persons such as plaintiffs, as members of the general public to whom the single family homes were being marketed would suffer damages if HDO designed, engineered, or oversaw construction in a manner which fell below the applicable standard of care and did not comply with the applicable safety and building codes, as well as other applicable standards of the industry. Defendant HDO knew or should have foreseen that plaintiffs, as members of the general public to whom the single family homes were being marketed, would suffer damages if HDO

1   designed, engineered, or oversaw construction in a manner which fell below the

2   applicable standard of care.

3   38.  Defendants HDO and Does 11-20, and each of them, breached their duty of care to

4   Plaintiffs, who continue to be the first and only residents of the Subject Property, by

5   failing to act according to the standard of care, in designing the Subject Property in

6   accordance with applicable safety and building codes and the standard of care for the

7   industry.  As a direct and proximate result of such breach, the Subject Property

8   suffers from the following defects which are attributable to HDO and Does 11-20's

9   actions, including but not limited to the following:

10     a.   There was no provision in HDO's plans for the installation of hydraugers to

11       de-water the Subject Property, as was recommended by Diablo Soils, the

12       soils engineer and as specified in the soils report. The lack of hydraugers and

13       failure to dewater the Subject property was a substantial factor in bringing

14       about the failure of the foundation systems at the Subject Property, causing

15       walls and floors to shift and move, the walls and floors and improvements

16       attached thereto to break, crack, and/or crumble, windows and doors not to

17       operate properly, floors and walls to be out of level and plumb, and retaining

18       walls and concrete flatwork to move, all of which require remedial repair or

19       replacement.

20     b.   The overall design of the Subject Property is inappropriate for the site and

21       many design details are missing from the architectural plans; these defects

22       were a substantial factor in bringing about the failure of the foundation

23       systems at the Subject Property, causing walls and floors to shift and move,

24       the walls and floors and improvements attached thereto to break, crack,

25       and/or crumble, windows and doors not to operate properly, floors and walls

       to be out of level and plumb, and retaining walls and concrete flatwork to

1    move.

2    c.    Discrepancies and inconsistencies exist in the plans prepared by HDO.  For

3    example, no tie beams are specified in the plans, yet a detail exists for tie

4    beams, the lack of which was a substantial factor in bringing about the failure

5    of the foundation systems at the Subject Property, causing walls and floors to

6    shift and move, the walls and floors and improvements attached thereto to

7    break, crack, and/or crumble, windows and doors not to operate properly,

8    floors and walls to be out of level and plumb, and retaining walls and concrete

9    flatwork to move.

10    d.    The overall foundation design was inadequate, which was a substantial factor

11    in bringing about the failure of the foundation systems at the Subject

12    Property, causing walls and floors to shift and move, the walls and floors and

13    improvements attached thereto to break, crack, and/or crumble, windows and

14    doors not to operate properly, floors and walls to be out of level and plumb,

15    and retaining walls and concrete flatwork to move.

16    e.    Defects in construction exist which should have been identified and

17    corrected by HDO ; the failure of HDO to identify and correct these

18    construction defects was a substantial factor in bringing about the failure of

19    the foundation systems at the Subject Property, causing walls and floors to

20    shift and move, the walls and floors and improvements attached thereto to

21    break, crack, and/or crumble, windows and doors not to operate properly,

22    floors and walls to be out of level and plumb, and retaining walls and concrete

23    flatwork to move.

24    39.    As a direct and legal result of the negligence of these defendants, and each of them,

25    the Subject Property has suffered property damage and is therefore defective.

Plaintiffs have been, and continue to suffer damages in an amount to be proven at

1    trial.

2    40.    As a further proximate and legal result of the negligence of defendants HDO and

3    DOES 11-20, and each of them, and the resultant property damages, plaintiffs have

4    incurred, and will continue to incur repair costs, loss of use of, and loss of market

5    value in an amount to be proven at trial.

6    41.    As a further proximate and legal result of the negligence of these defendants, and

7    each of them, and the resultant property damages, plaintiffs have been required to

8    expend sums to investigate and make temporary repairs to the Property in an amount

9    to be proven at trial.

10    WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as set

11    forth below.

12

13    **FIFTH CAUSE OF ACTION**

14    **(Strict Liability against Appian)**

15    42.    Plaintiffs incorporate by reference the allegations in paragraphs 1 through 43  of

16    this complaint as set forth fully herein.

17    43.    Plaintiffs are informed and believe, and based on that information and belief allege,

18    that defendants, and each of them, developed, manufactured, constructed, and

19    supplied products to the property, and/or sold the Subject Property as part of their

20    business in which they actively designed, developed, and constructed residential lots

21    and dwellings units for sale to the consuming public, including the home purchased

22    by plaintiffs.

23    44.    Plaintiffs are informed and believe, and based on that information and belief allege,

24    that defendants, and each of them, knew, and intended, that each of the residential

25    units, including plaintiffs' home and property would be purchased and used without

substantial inspection for defects.

Manley vs. Appian Construction, Inc., et al.
Page 15
Third Amended Complaint for Damages.

1    45.    In acquiring the Subject Property and home, plaintiffs reasonably and necessarily

2           relied upon the skill of defendants and reasonably expected that the property would

3           be free from defects, and reasonably fit for long-term habitation and other expected

4           uses of the property.

5    46.    Plaintiffs are informed and believe, and based on that information and belief allege,

6           that the property is defective in design and construction and that the property is unfit

7           and unsafe for its intended purpose, in that the house and property suffers from

8           numerous defects, the most prominent of which includes the failure of part or all of

9           the foundation systems causing the walls and floors to shift and move, the walls and

10         floors and improvements attached thereto to break, crack, and/or crumble, windows

11         and doors to not properly operate, floors and walls to be out of level and plumb, all

12         due to defendants' failure to ensure that the soil was adequately graded and

13         compacted, failure to provide adequate pier support and foundation, failure to

14         comply with applicable building codes and with the plans and specifications, as the

15         case may be.  Other defects exist in the property which plaintiffs have yet to

16         discover.

17    47.    Defendants, and each of them, knew or should have known of these defects and

18           failed to warn plaintiffs of the defective condition of the property, and are therefore

19           strictly liable for the injuries and damages sustained by plaintiffs.

20    48.    As a direct and legal result of the above-described defects, the Subject Property has

21           been, and continues to be, damaged in an amount to be proven at trial.

22    49.    As a further direct and legal result of the above-described defects, plaintiffs will

23           incur and have incurred repair costs, loss of use of the Subject Property, and loss of

24           market value of the Subject Property, in an amount to be proven at trial.

25    50.    As a further direct and legal result of the above-described defects, plaintiffs have

          been required to expend sums to investigate and make temporary repairs to the

1    property in an amount to be proven at trial.

2    WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as set

3    forth below.

4

## SIXTH CAUSE OF ACTION

### (Breach of Contract as against 1221 Monticello and Does 1-10)

7    51.    Plaintiffs incorporate the allegations of paragraphs 1 through 52 as though set forth

8    fully herein.

9    52.    Plaintiffs entered into a written contract with defendant 1221 Monticello for the

10    purchase of the Subject Property on February 11, 2002. The purchase price for the

11    property was $1,475,000.00 In that written contract, defendant expressly and

12    impliedly represented and warranted that the Subject Property and all component

13    parts were designed and constructed according to the plans and specifications and in

14    a workmanlike manner, was in good and marketable condition, free from defects,

15    habitable, and suited for its intended purpose as a residential home.

16    53.    Defendant breached the contract by selling to plaintiffs a property which has

17    numerous and significant defects as herein alleged, and which defects significantly

18    affect the value and desirability of the property, constitutes a significant failure of

19    consideration on the part of defendant seller, and that as such the property is not

20    marketable, not free from defects, not habitable, and not suited for its intended

21    purpose.

22    54.    As a direct and legal result of the above-described defects, the Subject Property has

23    been, and continues to be, damaged in an amount to be proven at trial.

24    55.    As a further direct and legal result of the above-described defects, plaintiffs will

25    incur and have incurred repair costs, loss of use and loss of market value in an

amount to be proven at trial.

Manley vs. Appian Construction, Inc., et al.
Page 17
Third Amended Complaint for Damages

56.  As a further direct and legal result of the above-described defects, plaintiffs have been required to expend sums to investigate and make temporary repairs to the property in an amount to be proven at trial.

57.  The contract between plaintiffs and defendant Appian provides for recovery of attorney's fees, which plaintiffs seek in this action for breach of contract by defendant.

WHEREFORE, plaintiffs pray for judgment against defendants, and each of them, as set forth below:

## PRAYER

1.  For general damages in an amount to be proven at trial;

2.  For special damages in an amount to be proven at trial, including, but not limited to, investigation costs, relocation costs, costs of repair, loss of market value, and loss of use;

3.  For attorney's fees according to proof;

4.  For costs of suit;

5.  For prejudgment interest; and

6.  For any further relief the court considers just and proper.

Date: October 1, 2007          By: _____
                                    CRAIG L. JUDSON

Sep-17-07   12:18pm   From-GORDON & REES 2                415 9868064              T-432  P.003/006  F-499



**architects • planners**

May 1, 2000

Mr. Vesty Enea
Appian Homes
1485 Enea Court, Suite 1480
Concord, Ca. 94520-5228

Dear Mr. Enea;

We are pleased to provide you with the following proposal for architectural services in connection with your project located on Los Arabis in Lafayette, California.

It is our understanding that you wish to develop the parcel with 2 single family homes. It is also our understanding that the working drawings for these homes will be a "Builders Sets" which means that we will only detail the exterior of the homes.

The architectural services, as outlined below, are meant to fulfill your requirements, and those of the City of Lafayette and other regulatory bodies having jurisdiction over the proposed development.

Services to be performed by the Architect are as follows:

DESIGN PHASE:

1.      ARCHITECTURE: We will prepare a site plan, floor plans, elevations, sketches and other drawings as may be necessary in defining the scope and to fix and describe the size and character of the Project as to architectural style, materials and such other elements as may be appropriate.

Remuneration for the above described design phase services shall be billed "Time and materials" per the attached hourly rate schedule.

CONSTRUCTION DOCUMENT PHASE:

1.      ARCHITECTURE: We will prepare a "Builders Set" of architectural construction drawings for the building that will include all necessary drawings and details. It is our understanding that the Structural, Mechanical and Electrical designs and drawings will

1/4

EXHIBIT "A"

be by other consultants hired by you, or "Design Build".

2.    All interior information including interior elevations, all finish detailing and specifications are not a part of this proposal and will be by the builder. Reflected ceiling plans are included as a part of the scope.

3.    COORDINATION: We will provide coordination of all other Consultants retained by the Client.

For the purposes of this proposal, "coordination" shall be defined as providing other consultants retained by the Client with information, requested by the Client or consultant to the best of the Architects ability at the time of the request.

Remuneration for the above described construction document phase services shall be in the amount of $12,750.00 per plan for the two "Builders sets" of drawings.

CONSTRUCTION ADMINISTRATION PHASE:
1.    On an as requested basis.

Remuneration for the above described construction administration phase services shall be billed "Time and materials" per the attached hourly rate schedule.

Services not listed above, are not a part of this proposal. This proposal is for Architectural services only.  Structural, Mechanical, Electrical, Civil, Soils Engineering, Traffic Studies, Environmental Impact Studies, Acoustical Studies, architectural renderings or other such non-architectural services are not a part of this proposal.

Payments to the Architect are to be made as per the attached payment schedule. Invoices are due and payable 5 days after the date on the invoice.  Invoices past due more than 30 days shall bear interest at the rate of 1% per month.

Additional services requested by the Client will be provided by the Architect at our hourly rates, or at our cost plus 10%, which ever is applicable.

The following are the supplemental General Conditions of this proposal and the Client and the Architect agree as follows:

1.    The Client shall furnish to the Architect all maps, contours, boundaries, easements, tree locations and grading information.  The Client shall be responsible for all soils tests and Civil engineering required for the project.  The Client shall be responsible for traffic studies, impact reports and other such items as may be required for approval.  The Client shall be responsible for filing the required documents to secure approval of all agencies having jurisdiction over the project.
2.    The Architect shall provide the Client with progress prints as required by the Client.

Computer plots will be billed at $10.00 each. Printing and shipping cost shall be billed to the Client at our cost plus 10%.

3. If, after a scheme has been approved, the Client makes a decision, which for its proper execution involves additional services by the Architect; the Client will remunerate the Architect for such additional service.

4. The agreement may be terminated by either party upon written notice. Client agrees to remunerate the Architect for his services to date of notification.

5. The ownership of drawings, as instruments of service, shall be that of the Architect whether the work for which they were made is executed or not. However, the Client may use all or portions of the plans and specifications, at his discretion, at no additional cost, if all reference to the Architect is removed from the documents and the Architect is held harmless for the use of said documents.

6. The Architect shall not have control or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for the safety precautions and programs in connection with the work.

7. The Architect shall not be responsible for construction cost estimates for this project.

If you are in agreement with the foregoing proposal, please acknowledge where indicated and return one copy to our office.

Thank you for the privilege of being of service.

Sincerely,

HDO Architects-Planners


Randall Harris, Architect


APPROVED:

By:_____
              Vesty Enea
Date:_____

May 1, 2000

Mr. Vesty Enea
Appian Homes
1485 Enea Court, Suite 1480
Concord, Ca. 94520-5228

HOURLY RATE SCHEDULE

Principal Architect: ................. $115.00 per Hour

Project Architect: .................... $95.00 per Hour

Project Managers ................... $75.00 per Hour

Draftsmen: ......................... $65.00 per Hour

All other: ......................... $40.00 per Hour

PAYMENT SCHEDULE

The following is the agreed payment schedule for Architectural services in connection with your project.

1.    DESIGN PHASE: Time and materials to be billed monthly.

2.    CONSTRUCTION DOCUMENTS: To be billed monthly in proportion to the amount of work completed.

3.    CONSTRUCTION ADMINISTRATION PHASE: Time and materials to be billed monthly.